E-FILED
Wednesday, 16 December, 2015  04:02:22 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

RICHARD C. WOODDELL, JR.,

          Plaintiff,

   vs.                              Case No. 14-cv-1474

JEFF STANDARD, Sheriff,

          Defendant.

## MOTION FOR SUMMARY JUDGMENT

NOW COMES the Defendant, JEFF STANDARD, by his attorneys, QUINN, JOHNSTON, HENDERSON, PRETORIUS & CERULO, and for his Motion for Summary Judgment, states:

## I.  INTRODUCTION

Plaintiff, Richard Wooddell, was an inmate at the Fulton County Jail from June 6, 2014 to August 25, 2014 and November 12, 2014 to May 15, 2015. During that time, Wooddell was seen by the medical providers at the Fulton County Jail, Advanced Correctional Healthcare staff and treated by them. This Court's merit review order states that Plaintiff made a claim of medical indifference against Sheriff Jeff Standard for refusing to provide him with the names of the medical providers at the jail. However, during the course of his deposition, Plaintiff stated that the extent of his claim against Sheriff Standard was that he denied his grievance appeal to see an outside doctor. Wooddell dep. (Exhibit 1) at 105. The undisputed material facts in this case demonstrate

that Sheriff Standard was not deliberately indifferent to the Plaintiff's claims, either in his official or individual capacity. Sheriff Standard delegated the provision of medical care to the Advanced Correctional Healthcare medical providers and is not directly involved in the medical care provided to inmates at the Fulton County Jail. Likewise, the Sheriff has no policy or widespread custom that interferes with or prevents the provision of medical care by medical professionals. Defendant is entitled to summary judgment.

## II. STATEMENT OF UNDISPUTED MATERIAL FACTS[1]

1. Jeff Standard serves as the Fulton County Sheriff for Fulton County, Illinois. As Sheriff, Standard is responsible for law enforcement at the county level as well as the management of the County Jail. Affidavit of Jeff Standard (Exhibit 2) at ¶2.

2. Richard Wooddell, born in 1974, is from Canton, Illinois. Wooddell dep. at 9. Wooddell has no medical training. Wooddell dep. at 10. Wooddell has been convicted of felony burglary, theft, forgery, robbery, escape and motor vehicle theft. Wooddell dep. at 14-15. Prior to June 6, 2014, Wooddell had been an inmate in the Fulton County Jail 10-20 times. Wooddell dep. at 28.

3. Wooddell was an inmate at the Fulton County Jail from June 6, 2014 to August 25, 2014. Wooddell dep. at 14, 34. He was granted a furlough but did not surrender

---

[1] The facts stated are the facts taken in the light most favorable to the Plaintiff, Richard Wooddell. While there are factual disputes, they are not material to the disposition of the motion. The identification of facts for purposes of this motion is not an admission by the defendant that facts will not be contested at trial.

himself to the jail as ordered. *Id.* He was then arrested for escape, as well as his pending burglary charge. *Id.* Wooddell was again an inmate in the Fulton County Jail from approximately November 12, 2014 to May 15, 2015. *Id.*

4.   Sheriff Standard is not a medical professional and has no medical training beyond basic first aid and CPR. Standard aff. at ¶3. Sheriff Standard and Fulton County rely upon and defer to the Advanced Correctional Healthcare medical professionals' judgment regarding inmate medical care. Standard aff. at ¶7.

5.   Medical care at the Fulton County Jail from June 2014 to December 2014 was provided by Advanced Correctional Healthcare pursuant to a services contract. Standard aff. at ¶4. Advanced Correctional Healthcare provides on-site evaluations and medical care performed by physicians and nurses, as well as basic pharmaceuticals, on-site laboratory testing, disposable medical supplies, and dental triage screenings to county inmates. Standard aff. at ¶6. Furthermore, Advanced Correctional Healthcare is responsible for coordinating and arranging the delivery of all off-site treatment of inmates. Standard aff. at ¶5.

6.   For urgent medical needs, correctional staff has telephone access to ACH physicians 24/7 when medical staff is not physically present at the jail. Standard aff. at ¶10.

7.   Wooddell was provided with an initial medical evaluation at the Fulton County Jail. Wooddell dep. at 29.

8.   Wooddell was provided with the rules of the Fulton County Jail, including the procedure for how to file a grievance. Wooddell dep. at 29. Inmate grievances are submitted to Lt. Lafary, who is delegated the authority to investigate the allegations contained within grievances and to make determinations as to whether the grievance is founded or unfounded. Standard aff. at ¶11. Sheriff Standard is copied on Lt. Lafary's grievance responses but does not review them. *Id.* Appeals from grievance denials are sent directly to Sheriff Standard for his review and the Sheriff makes the determination of whether the appeal is granted or denied. *Id.*

9.   Wooddell knew the process for seeking medical care at the Fulton County Jail, which he had done "many times" before. Wooddell dep. at 30.

10. To receive medical care at the Fulton County Jail, an inmate fills out a request form, gives the form to one of the correctional officers and then is called to be seen by the medical provider. Wooddell dep. at 30, 37; Standard aff. at ¶¶8-9. Once an inmate is seen by a medical provider, the provider would write notes and initial the sick call request form. Wooddell dep. at 30, 37.

11. To receive prescribed medications at the Fulton County Jail, a correctional officer walks around the cell block, calls the inmates name and then passes the medications to the inmate. Wooddell dep. at 31.

12. On June 27, 2014, Wooddell submitted a request to see a medical provider indicating that he suffered from anxiety and depression, but had not been on

medication since 2007 and did not have a prescription for medication. Wooddell dep. at 34-35; 6/27/14 Sick Call Request Form (Exhibit 3).

13. In response to his June 27, 2014 request, on June 27, 2014, Wooddell was seen by a medical provider at the Fulton County Jail. Wooddell dep. at 40-43; 6/27/14 Medical Progress Note (Exhibit 17). Wooddell complained of high blood pressure, scoliosis, arthritis, chest pain, heart palpitations, and frequent urination with urgency. *Id.* In response to his complaints, a physical examination by the medical provider was conducted and a treatment plan was put in place that consisted of directing Wooddell to exercise, a plan to re-check his blood pressure, and Wooddell signed releases of his medical records for Lawrenceville Correctional Center, Territorial Correctional Center and Dixon Special Treatment Center. *Id;* Authorization for Release of Information to Lawrenceville Correctional Center (Exhibit 18); Authorization for Release of Information to Territorial Correctional Center (Exhibit 19).

14. On June 28, 2014, Wooddell submitted a request to see a dentist and was seen on July 1, 2014 by the Fulton County Jail medical provider. Wooddell dep. at 48-49; 6/28/14 Sick Call Request (Exhibit 4); 7/1/14 Medical Progress Note (Exhibit 20).

15. The medical provider documented Wooddell's complaints of tooth pain, took his blood pressure, put him on a soft diet, and was treated by a dentist. Wooddell dep. at 48-49; 6/28/14 Sick Call Request; 7/1/14 Medical Progress Note.

16. On July 3, 2014, Wooddell was seen by the Fulton County medical provider who documented his complaint of high blood pressure and checked his blood pressure. Wooddell dep. at 50; 7/3/14 Medical Progress Note (Exhibit 21).

17. On July 12, 2014, Wooddell submitted a request to see the Fulton County Jail medical provider after hitting his head. Wooddell dep. at 51; 7/12/14 Sick Call Request (Exhibit 5). On July 13, 2014, Wooddell submitted a request to see the Fulton County Jail medical provider for complaints of arthritis, scoliosis, trouble sleeping and high blood pressure. Wooddell dep. at 51; 7/13/14 Sick Call Request (Exhibit 6). Plaintiff was seen on July 15, 2014 by the Fulton County medical provider who documented his complaints, took his blood pressure and vitals. Wooddell dep. at 52-53; 7/15/14 Medical Progress Note (Exhibit 22). The medical provider also noted the lack of objective indications of insomnia, such as dark circles under the eye, sunken appearance to the eye, or paleness. 7/15/14 Medical Progress Note. The treatment for Wooddell's complaints were to log his sleep for 72 hours and educate him on caffeine and exercise. 7/15/14 Medical Progress Note; Wooddell dep. at 52-53.

18. On August 11, 2014, Wooddell submitted a request to see the Fulton County Jail medical provider complaining of an onion allergy and was seen on August 15, 2014 by the medical provider. Wooddell dep. at 54; 8/11/14 Sick Call Request Form (Exhibit 7); 8/15/14 Medical Progress Note (Exhibit 14). The treatment plan for Wooddell was to resend the request for previous medical records from Lawrenceville Correctional Center

to verify his arthritis and for a 72 hour activity log. 8/15/14 Medical Progress Note; Wooddell dep. at 55.

19. From August 25, 2014 to November 11, 2014, Plaintiff was a fugitive from the Fulton County Jail and therefore did not receive any medical treatment at the jail. Wooddell dep. at 14.

20. On November 11, 2014, Wooddell submitted a request to see the Fulton County Jail medical provider complaining of depression, anxiety and arthritis and he was seen on November 13, 2014. Wooddell dep. at 56, 58; 11/11/14 Sick Call Request (Exhibit 8); 11/13/14 Medical Progress Note (Exhibit 15). The medical provider took Wooddell's vitals, noted his complaints, and noted no signs or symptoms of anxiety or depression. 11/13/14 Medical Progress Note. The medical provider's treatment plan was to log Wooddell's activities for 72 hours and provide him with relaxation education. 11/13/14 Medical Progress Note; Wooddell dep. at 59.

21. On November 20, 2014, Wooddell submitted a grievance to the Fulton County Jail complaining of not receiving medications from the jail medical provider and not being examined by the medical provider. 11/20/14 Grievance (Exhibit 9).

22. On November 28, 2014, Wooddell received a written response to his grievance stating that Lt. Lafary had reviewed his medical records and determined that Wooddell was being treated for his medical complaints, thus his grievance was unfounded. 11/28/14 Grievance Response (Exhibit 10).

23. On December 1, 2014, Wooddell appealed the denial of his grievance to Sheriff Standard. 12/1/14 Grievance Appeal (Exhibit 11); Standard aff. at ¶12.

24. Sheriff Standard did not have knowledge of Wooddell's complaint regarding his medical treatment until receiving Wooddell's December 1, 2014 grievance appeal. Standard aff. at ¶12.

25. On December 7, 2014, Sheriff Standard responded to Wooddell's appeal and denied it. Standard aff. at ¶12. Sheriff Standard, in coming to his decision, reviewed Wooddell's grievance, his appeal, and Lt. Lafary's investigation of Wooddell's grievance. *Id.* Sheriff Standard relied on Lt. Lafary's recommended denial, Lafary's review of Wooddell's medical records, and the judgment of the medical professionals treating Wooddell at the jail. *Id.* Sheriff Standard copied Advanced Correctional Healthcare on his December 7, 2014 letter to apprise them of Wooddell's grievances and refer the matter to them. *Id.*

26. Other than denying Wooddell's appeal, Sheriff Standard had no other involvement with Wooddell's medical care. Standard aff. at ¶13.

27. Sheriff Standard did not have any reason to believe that Wooddell's medical care was inadequate. Standard aff. at ¶13.

28. In the late hours of December 22, 2014, Wooddell was observed by Officer Kelly attempting to hang himself with a rope. Wooddell dep. at 86. Wooddell was then placed in a suicide gown and placed on suicide watch. *Id.* at 87. Wooddell was seen on

December 23, 2014 by a medical provider and placed on the medication Zyprexa. 12/23/15 Medical Progress Note (Exhibit 13); Wooddell dep. at 61.

29. Wooddell did not make a request to see a medical provider from November 11, 2014 until January 2, 2016, when he requested to come off of suicide watch. 1/2/15 Sick Call Request (Exhibit 12); Wooddell dep. at 61-62. Wooddell stated that he "tried to hang myself because there were inmates in H Block bullying me...." 1/2/15 Sick Call Request; Wooddell dep. at 61-62.

30. The medical providers at the Fulton County Jail were aware of Wooddell's claimed medical conditions and had his medical records from prior incarcerations at the Fulton County Jail and elsewhere. Wooddell dep. at 25.

31. The medical providers at the jail did not provide Wooddell with the medical care he desired. Wooddell dep. at 25.

32. Sheriff Standard is not directly involved in the dispensing of medication to inmates. Wooddell dep. at 25; Standard aff. at ¶13.

33. Sheriff Standard is not directly involved in the medical evaluations of inmates. Wooddell dep. at 26; Standard aff. at ¶13.

34. Sheriff Standard does not assess, evaluate or diagnose inmates with medical conditions. Wooddell dep. at 26; Standard aff. at ¶13.

35. Sheriff Standard was never present while Wooddell was being treated by the jail medical providers. Wooddell dep. at 99; Standard aff. at ¶13.

36. Sheriff Standard was not involved with creating treatment plans for Wooddell. Wooddell dep. at 105; Standard aff. at ¶13.

37. After Sheriff Standard denied Wooddell's grievance appeal on December 7, 2014, Wooddell approached Sheriff Standard in the jail and stated that he wanted to go to an outside doctor because he felt he wasn't getting medical treatment at the jail. Wooddell dep. at 100-101. Sheriff Standard reiterated his grievance response and stated that that the medical providers at the jail were sufficient. *Id.*

38. The jail is reviewed and inspected regularly by the Illinois Department of Corrections, including the medical care provided. The Illinois Department of Corrections has not criticized the jail's medical care while ACH has provided medical services. Standard aff. at ¶16.

## III.  ARGUMENT

### A. Summary judgment standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986). The Court considers the entire evidentiary record and must view all of the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Ball v. Kotter,* 723 F.3d 813, 821 (7th Cir. 2013). To defeat summary judgment, a nonmovant must produce more than "a mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Harris*

*N.A. v. Hershey,* 711 F.3d 794, 798 (7th Cir. 2013). In § 1983 cases, "the plaintiff bears the burden of proof on the constitutional deprivation that underlies the claim, and thus must come forth with sufficient evidence to create genuine issues of material fact to avoid summary judgment." *Padula v. Leimbach*, 656 F.3d 595, 600 (7th Cir. 2011) *quoting McAllister v. Price,* 615 F.3d 877, 881 (7th Cir. 2010).

## B. Defendant sued in official or individual capacity

Wooddell's Complaint does not explicitly indicate whether he is suing Sheriff Standard in his official or individual capacity. "Where a complaint alleges that the conduct of a public official acting under color of state law gives rise to liability under Section 1983, [the Seventh Circuit] will ordinarily assume that he has been sued in his official capacity." *Kolar v. Sangamon Cnty. of State of Ill.,* 756 F.2d 564, 568 (7th Cir. 1985). If a plaintiff wishes to sue a public official in his individual capacity, he must expressly state his intent in the complaint. *Id.* Here, Wooddell does not expressly purport to sue Sheriff Standard in his individual capacity, and thus the Court should assume that he brings suit against Standard in his official capacity as Fulton County Sheriff. Wooddell's repeated references to Sheriff Standard's official position—"Jeff Standard (Sheriff)," "Sheriff Jeff Standard" and repeated statements that "He is in charge" (Wooddell dep. at 25-26)—also lend support to this interpretation. *See Kolar,* 756 F.2d at 568 (noting plaintiff's repeated references to the defendant's official title and office).

Wooddell's claims against Sheriff Standard, whether in his official or individual capacity, are unsupported by the facts. Defendant is entitled to summary judgment.

## C. Section 1983 official capacity claim

Claims against a Sheriff in his official capacity are treated as claims against the office of the sheriff as a municipal entity. Governmental entities cannot be held liable for the unconstitutional acts of their employees unless those acts are carried out pursuant to an official custom or policy. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658,694 (1978). An official capacity claim presumes an underlying constitutional violation. Absent a constitutional violation, Sheriff Standard, in his official capacity, cannot be held liable for any injury claimed by Richard Wooddell. *Pasiewicz v. Lake County Forest Preserve Dist.*, 270 F.3d 520, 527 (7th Cir. 2001). If Sheriff Standard was not deliberately indifferent to a serious medical need of Richard Wooddell, the official capacity claim fails along with the individual capacity claim.

To survive a summary judgment on a § 1983 official capacity claim, the plaintiff "must point to either an express policy which caused the injury, a widespread practice that is so well-settled as to amount to a policy, or that the sheriff had the final policymaking authority for the decisions regarding the medical treatment [Wooddell] received." *Perkins v. Lawson*, 312 F.3d 872, 875 (7th Cir. 2002). The plaintiff must also show that the official policy or custom was the cause of the alleged constitutional violation. *City of Canton, Ohio v. Harris,* 489 U.S. 378, 385 (1989). "Isolated acts of misconduct will not suffice; a series of violations must be present to lay the premise of deliberate indifference." *Palmer v. Marion County*, 327 F.3d 588, 596 (7th Cir. 2003).

12

### 1. There is no evidence of an unconstitutional custom or policy.

There is no evidence of an unconstitutional custom or policy in this case, much less one that caused any injury to Wooddell. In *Hahn v. Walsh,* 915 F. Supp. 2d 925, 951 (C.D. Ill. 2013), plaintiff brought an official capacity claim against the sheriff for failure to train its officers regarding mental illness and diabetes. The sheriff argued that there was no policy or custom or lack thereof that was the moving force behind the constitutional violation. *Id.* The plaintiff in *Hahn* responded by identifying things that were not done properly or could have been done better in the jail. *Id.* The court, rejecting municipal liability, stated that plaintiff had not made "even a rudimentary attempt to identify a policy or practice which was the moving force behind the constitutional harm [ ] suffered." *Id. citing Rice ex. Rel. Rice v. Correctional Med. Servs.*, 675 F.3d 650, 677 (7th Cir. 2012). Similarly, Wooddell has merely stated that he was refused the names of the medical providers at the jail and that his grievance appeal was denied, a far cry from identifying a policy or custom that caused his alleged constitutional violation. To the contrary, the Sheriff contracts with a qualified medical provider and defers to their medical judgment regarding the treatment of detainees.

## 2. Wooddell's claimed injury was not caused by a custom or policy.

Even assuming that there was policy[2] of refusing to provide the names of the medical providers, the refusal to provide those names in no way affected Wooddell's ability to obtain medical treatment, as demonstrated by his testimony that he followed the procedure of filling out a medical request form and submitting it to a correctional officer to see a medical provider "many times." Wooddell dep. at 30, 37.

Wooddell also alleges that Sheriff Standard's denial of his grievance appeal resulted in his being provided with ineffective medical care. Wooddell does not assert and fails to present evidence of how the grievance procedure caused his ineffective medical care. *Grieveson v. Anderson*, 538 F.3d 763 (7th Cir. 2008) is instructive on the issue of official capacity claims involving grievance procedures. In *Grieveson*, the plaintiff brought an official capacity claim against the sheriff, arguing that the grievance procedure and the "sham" manner in which it was carried out caused him to be beaten by other inmates. *Id.* at 772. The court noted that Grieveson failed to show that the policy effectively allowed prisoners to beat one another or that there was no opportunity to express safety concerns to jail officials. *Id.* The court stated that the evidence showed that Grieveson had many opportunities to express his fears and concerns to jail officials, and that he

---

[2] There is no evidence that there was a policy of refusing to provide the names of medical providers and Defendant's argument is meant merely to address the issue of causation, of which there is no evidence. Further, even if there was a policy, there is no evidence that it was an unconstitutional policy.

did so on several occasions. The court acknowledged the weakness of Grieveson's logic, stating:

> Seeing as the jail did not have to employ any grievance procedure whatsoever under the Fourteenth Amendment, it is hard to understand how the implementation of one – even one that did not function perfectly – would actually *cause* prisoner beatings. It is only 'when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983'.

*Id.* at 772-73.

Similarly, in the instant case, there is no evidence that the grievance procedure or the manner in which it was carried out caused Wooddell's injuries. Wooddell presented no evidence that the grievance procedure allowed the medical providers at the jail to provide inadequate medical care. Further, the undisputed evidence demonstrates that Wooddell had ample opportunities to express his concerns regarding his medical care to both the medical providers and jail officials and took advantage of those opportunities. *See* Exhibits 3-10. Furthermore, Wooddell's burden of showing causation fails because the Sheriff has delegated the provision of medical care, including the referral of inmates to outside providers, to Advanced Correctional Healthcare. *See Perkins v. Lawson*, 312 F.3d 872, 875 (7th Cir. 2002) (stating that the plaintiff's official capacity claims "create problems for the plaintiffs" because they fail to "assert that any of the policies or procedures caused the harm that [plaintiff] suffered [and] [h]e does not claim that as a policymaker the sheriff made a decision regarding the sort of treatment [plaintiff] would receive").

15

Summary judgment is proper on the official capacity claim.

## D. Section 1983 individual capacity claim

Even assuming Wooddell were to make a claim against Sheriff Standard in his individual capacity, Wooddell's claim fails. To prevail on his claim, Wooddell would need to show that his medical needs were "objectively, sufficiently serious" and that the Sheriff was deliberately indifferent to those needs. *Farmer v. Brennan,* 511 U.S. 825 (1994). To show deliberate indifference, he must establish that the Sheriff "was subjectively aware of the prisoner's serious medical needs and disregarded an excessive risk that a lack of treatment posed" to his health. *Wynn v. Southward,* 251 F.3d 588 (7th Cir. 2001). Negligence or even gross negligence does not constitute deliberate indifference. *Washington v. LaPorte County Sheriff's Dep't,* 306 F.3d 515 (7th Cir. 2002); *Snipes v. DeTella,* 95 F.3d 586 (7th Cir. 1996).

### 1. No evidence that Wooddell suffered from an objectively serious medical need.

Wooddell must first present evidence supporting the conclusion that he had an "objectively serious medical need." *Wynn v. Southward,* 251 F.3d 588, 593 (7th Cir. 2001). An objectively serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Zentmyer v. Kendall Cnty.,* 220 F.3d 805, 810 (7th Cir. 2000) (citations omitted). Wooddell has alleged that he suffered from anxiety, depression, high blood pressure, insomnia, scoliosis and arthritis. Compl. at p.

16

5. Despite these claims of medical conditions, Wooddell has failed to present evidence to support a diagnosis of these conditions or that these conditions were severe enough to necessitate treatment other than that which was provided to him from June 2014 to December 2014. As the inmate's acting primary care doctor, the prison doctor is "free to make his own, independent medical determination as to the necessity of certain treatments or medications, so long as the determination is based on the physician's professional judgment and does not go against accepted professional standards." *Holloway v. Delaware Cty. Sheriff*, 700 F.3d 1063, 1074 (7th Cir. 2012).

Contrary to Wooddell's claims, the medical records in this case indicate that the Fulton County medical provider monitored Wooddell's claims of anxiety and depression with activity logs and noted that he was calm, cooperative and had "no s/s [signs or symptoms] of anxiety or depression at this time." 11/13/14 Medical Progress Note. Prior to that date, Wooddell informed the medical provider that he had no prescription for medication to address his claimed anxiety or depression. Wooddell dep. at 34-35; 6/27/14 Sick Call Request Form (Exhibit 3). On July 15, 2014, the Fulton County medical provider documented Wooddell's complaint of insomnia, monitored Wooddell's sleep and noted that he demonstrated no dark circles around the eyes, no sunken appearance to the eye, and his skin was warm, dry and not pale. 7/15/14 Medical Progress Note. On August 15, 2014, the Fulton County medical provider requested records from Lawrenceville Correctional Center to verify Wooddell's claims of arthritis. . 8/15/14 Medical Progress Note; Wooddell dep. at 55. The Lawrenceville

Correctional Center records do not contain a diagnosis of arthritis or scoliosis, rather the radiology report is unremarkable. 6/10/11 radiology report (Exhibit 16). Further, Wooddell has presented no records to support his claim of high blood pressure and the records indicate that his blood pressure was consistently checked by the jail medical provider. Wooddell was not suffering from an objectively serious medical condition.

### 2. Standard was not deliberately indifferent to a serious medical need.

Wooddell must prove that Sheriff Standard was deliberate indifferent such that he had "reason to believe (or actual knowledge) that prison doctors or their assistants were mistreating (or not treating) a prisoner." *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012). In the instant case, Sheriff Standard is not a medical professional and his involvement with Wooddell's claimed medical conditions was limited to denying Wooddell's grievance appeal. Standard aff. ¶11. Sheriff Standard received Lt. Lafary's November 28, 2014 appeal response and Wooddell's grievance. Standard aff. ¶11. Sheriff Standard agreed with Lt. Lafary's denial of the grievance because Wooddell's records indicated that he had been evaluated by the jail medical providers numerous times and was receiving medical care for his conditions. Standard aff. ¶11. What Sheriff Standard had reason to believe or actually knew when he denied Wooddell's grievance appeal is limited to the documentation of the medical providers, Lt. Lafary's investigation, and Wooddell's grievance documents. That information would not reasonably lead to a conclusion that Wooddell was not receiving medical treatment.

Sheriff Standard investigated Wooddell's complaint and made sure that medical care was available and being provided to Wooddell. Standard aff. ¶11.

In *Johnson v. Doughty,* 433 F.3d 1001, 1010-11 (7th Cir. 2006), an inmate brought claims of deliberate indifference to medical needs against prison doctors and officials because they treated his hernia through non-surgical means. The prison officials' interactions with the inmate were limited to dealing with his grievances and complaints about his hernia treatment. *Id.* at 1010. The inmate's grievance initially went to the grievance counselor, who recommended that it be denied. *Id.* at 1010. That recommendation and initial grievance then went to the warden who concurred with the grievance counselor's recommendation and relied on the expertise of the medical professionals who were evaluating and providing the inmate with care. *Id.* at 1011. The court held that "under the circumstances, Romero [the warden] reasonably relied on the expertise of the medical professionals and [  ], did not act with deliberate indifference." *Id.* at 1011. *See also Perkins v. Lawson*, 312 F.3d 872 (7th Cir. 2002) (finding that "the fact that jail officials relied on the opinion of the doctors militates against a finding of deliberate indifference on the part of any jail staff"); *Greeno v. Daley*, 414 F.3d 645 (7th Cir. 2005) (finding that official who reviewed inmate complaints and verified with medical officials that inmate was receiving treatment cannot be found deliberately indifferent where he took no further action once he had referred the matter to the medical providers); *Hayes v. Snyder*, 546 F.3d 516 (7th Cir. 2008) (finding that non-medical defendants who relied on

the professional judgment of medical prison officials, where prison official reports did not indicate some obvious failure in care, were not deliberately indifferent).

In the instant case, Sheriff Standard's did not learn of Wooddell's medical complaints until Wooddell's grievance appeal and he had no reason to believe that the medical providers were mistreating or not treating Wooddell. Standard aff. ¶11. Sheriff Standard relied on the professional medical judgment of the medical providers in the jail since it had been determined that Wooddell was seeing the medical providers in response to his complaints and was receiving medical care promptly after making those complaints. Standard aff. ¶11. As in *Johnson*, a non-medical prison official's reliance on the professional judgment of medical prison officials is not the basis of a deliberate indifference claim.

Summary judgment is proper on the individual capacity claim.

### E. Defendant is entitled to qualified immunity.

"Qualified immunity protects a defendant from liability as well as from the burden of standing trial." *Borello v. Allison*, 446 F.3d 742, 746 (7th Cir. 2006). "In determining whether qualified immunity applies, this [C]ourt considers: (1) whether the plaintiff has asserted a violation of a federal constitutional right, and (2) whether the constitutional standards implicated were clearly established at the time in question." *Spiegel v. Cortese*, 196 F.3d 717, 723 (7th Cir. 1999) (citation and internal quotation marks omitted). "Although qualified immunity is a defense to a § 1983 suit, the burden of meeting the elements of this two-part test rests on the plaintiff." *Spiegel*, 196 F.3d at 723.

Wooddell's allegations against Sheriff Standard, sued in his individual capacity, are not sufficient to allege a constitutional violation and even if Wooddell had the constitutional right to know the names of the medical providers or be treated by his doctor in Canton, Illinois, as those rights were not clearly established at the time Wooddell was incarcerated. Inmates are not entitled to demand specific care, the doctor of their choice, or the best care possible. *Forbes v. Edgar,* 112 F.3d 262, 267 (7th Cir. 1997). Further, inmates have no substantive right to a grievance procedure. *Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982) (stating failure to process grievances is not actionable under §1983).

Furthermore, Sheriff Standard, a non-medical prison official, was justified in relying on the judgment of the Advanced Correctional Healthcare medical providers at the jail. *Greeno v. Daley,* 414 F.3d 645, 656 (7th Cir. 2005) ("we can see no deliberate indifference given that he investigated the [inmate's medical] complaints and referred them to the medical providers who could be expected to address [the inmate's] concerns."). Sheriff Standard is entitled to qualified immunity.

WHEREFORE, the Defendant, JEFF STANDARD, respectfully prays that the Court enter an Order granting this motion, entering summary judgment in his favor, that he have his fees and costs, and for such other and further relief as the Court deems just.

JEFF STANDARD, Defendant

By: _____ *s/Christina E Cullom* _____
                    Christina E. Cullom
       QUINN, JOHNSTON, HENDERSON, PRETORIUS & CERULO

Peter R. Jennetten (Illinois Bar No. 6237377)
pjennetten@quinnjohnston.com
Christina E. Cullom (Illinois Bar No. 6305688)
ccullom@quinnjohnston.com
QUINN, JOHNSTON, HENDERSON, PRETORIUS & CERULO
227 N.E. Jefferson Ave.
Peoria, IL  61602-1211
(309) 674-1133 (phone)
(309) 674-6503 (fax)
I:\1\Civil\Wooddell v. ACH 101 351 245\wooddell msj.docx

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on **December 16, 2015**, I electronically filed this **MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system.

And I hereby certify that on **December 16, 2015**, I mailed a copy of this document by United States Postal Service to the following non-registered CM/ECF system participant:

Richard C. Wooddell, Jr.                    *Pro se* **Plaintiff**
B54993
Dixon Correctional Center
2600 N. Brinton Ave.
Dixon, IL  61021


<u>s/Christina E. Cullom</u>
Christina E. Cullom (Illinois Bar No. 6305688)
ccullom@quinnjohnston.com
QUINN, JOHNSTON, HENDERSON, PRETORIUS & CERULO
227 N.E. Jefferson Ave.
Peoria, IL  61602-1211
(309) 674-1133 (phone)
(309) 674-6503 (fax)